## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| VIVIAN GREEN, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-19-2595 |
| | * | |
| BOARD OF EDUCATION OF | * | |
| ANNE ARUNDEL COUNTY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Vivian Green ("Plaintiff") filed a Complaint against her former employer, the Board of Education of Anne Arundel County, alleging discrimination on the basis of race and age, in addition to retaliation. ECF 1. Discovery is now concluded. Defendant filed a motion for summary judgment, ECF 39, which I have reviewed along with the relevant exhibits, opposition, and reply. ECF 46, 47, 52. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant Defendant's Motion for Summary Judgment.

## I.      FACTUAL BACKGROUND

The facts contained herein are taken in the light most favorable to Plaintiff, the non-moving party. Plaintiff began working for Anne Arundel County Schools in 2005, serving in various capacities. ECF 47-1 at 5. While so employed, she pursued and received a Bachelor of Science in Education in 2013, which allowed her to begin seeking teaching positions. *Id.* at 4. When her initial inquiries with Defendant about teaching positions did not meet with success, Plaintiff contacted the American Civil Liberties Union in July 2016, asking them to investigate whether she had experienced race and age discrimination. *Id.* at 6. After the ACLU contacted Defendant, Plaintiff was offered a provisional teaching position which would require her to divide her time

between two different middle schools each day. *Id.* at 7. Plaintiff accepted the provisional position. *Id.*

In her new role, Plaintiff spent part of her day at Brooklyn Park Middle School, where Helen Shakan served as principal. *Id.* In December, 2016, Shakan observed Plaintiff's class to evaluate her performance. *Id.* at 11-12. According to Plaintiff, Shakan spent little time actually observing the class, due to a coughing fit and a meeting with another staff member. *Id.* However, Shakan issued Plaintiff a low performance rating, rating her ineffective in ten of thirty-four performance areas. ECF 39-9. Plaintiff contested the rating, but it was not changed, despite Plaintiff having positive "walkthrough evaluations" from other individuals.[1] ECF 47-1 at 12.

In January, 2017, Shakan told Plaintiff that she had statements from students alleging that Plaintiff had hit them. *Id.* at 6-7. Additionally, Shakan then asked Plaintiff to sign a written statement confirming that she had been recording students to reduce disciplinary issues. *Id.* Plaintiff refused to sign the statement because she had not recorded students and the allegations were untrue. *Id.* However, Plaintiff acknowledged that she had told students they were being recorded and had a decoy "recording device" on her desk. *Id.* Plaintiff receive a warning letter for the investigation of physical touching but no disciplined for the alleged recording. ECF 39-12; ECF 39-13.

Marcia Moore is an African American teacher at Brooklyn Park Middle School. ECF 47-2 at 20. Moore believes that the evaluation system at Brooklyn Park is "a broken one" that can be "subjective." *Id.* at 21. She also believes that Shakan's evaluations in particular are not objective. *Id.* at 21-22. Moore believed that it was discriminatory to hire Plaintiff, as a new teacher, into the

---

[1] Plaintiff's complaint alleged that a Caucasian provisional teacher, Mr. Peterson, was able to have his rating changed upon contesting it. However, she has proffered no evidence substantiating that occurrence beyond her own speculative interrogatory responses. ECF 47-1 at 13.

challenging assignment of working at two different schools during the workday. *Id.* at 23. She agrees with Plaintiff that Caucasian employees received preferential treatment and also believed that Plaintiff was not treated well so "you've gotta wonder if it was racist." *Id.*

At Marley Middle School, Plaintiff worked with a co-teacher, Ms. Ongley-Wilson. ECF 47-1 at 9. Plaintiff suspected that Ongley-Wilson was complaining to supervisors about her performance. *Id.* Marley's assistant principal Brian Ravenbakhsh, after observing the classroom, told Plaintiff that he wanted her to work with two other teachers to improve her phonics because she had mispronounced two words. *Id.* He explained that he wanted the students to speak "proper and correct English." *Id.* Plaintiff reported the incident to Ravenbakhsh's supervisors and to the teachers' union. *Id.*

On February 8, 2017, Ongley-Wilson dressed nicely for work and informed Plaintiff that their classroom was going to be observed that day. *Id.* at 10. Plaintiff had no advance notice of the observation. *Id.* Without telling Plaintiff, Ongley-Wilson changed the lesson plan just prior to the observation, which was conducted by five observers. *Id.* The observers rated Plaintiff "ineffective" in thirty-two of thirty-four performance areas. ECF 39-11. Plaintiff explained to the assistant principal of Marley Middle School, Linda Chandler, that she had already been observed at Brooklyn Park. ECF 47-1 at 10. Plaintiff believed that she was observed more times than her colleagues. *Id.* On February 16, 2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race and age discrimination and retaliation in the "denial of hire and harassment," to include "false performance allegations, unsubstantiated counseling sessions, threats of termination, and negative teaching observations." ECF 39-7.

About a month later, in March 2017, an African American assistant principal at Brooklyn Park Middle School, Reed Cooper, conducted a third observation of Plaintiff's classroom. ECF

47-1 at 35.  Cooper also rated Plaintiff ineffective in twelve of thirty-four performance areas.  ECF 39-10.

Plaintiff's one-year provisional contract expired on its originally scheduled date, in June 2017.  ECF 39-6.  On the last day of Plaintiff's employment, Shakan gave her an ineffective evaluation rating and told her that she would not be recommended for further employment in the school system.  ECF 47-1 at 8.  Plaintiff asked to be placed in excess status so that she could work at another school, but Shakan stated that Plaintiff would need to apply online for other positions. *Id.*

On July 12, 2017, Jessica Cuches, Defendant's Executive Director in Human Resources, emailed Plaintiff to confirm that letters had been sent on May 19, 2017 and May 24, 2017 to inform her of the expiration of her provisionally contracted position on June 30, 2017.  *Id.* at 15.  Plaintiff had asked for a meeting with the Board of Education because she believed that she was being terminated without cause and should have been informed before May 19, 2017.  No such meeting occurred, and Plaintiff was not afforded further process.

The EEOC issued a right to sue letter on June 17, 2019.  This lawsuit ensued and discovery has now concluded.

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of showing that there is no genuine dispute of material fact.  *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a

4

genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III.    ANALYSIS

Plaintiff's Complaint contains three counts: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 UCS 2000e *et seq.*; (2) retaliation also in violation of Title VII; and (3) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. 633(a). Each claim is discussed below.

### A.  Counts One and Three: Race and Age Discrimination

Plaintiff proffers no direct evidence of Defendant's intent to treat its employees differently based on their race or age.[2]  *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (defining direct evidence as evidence that "reflect[s] directly the alleged discriminatory attitude" and "bear[s] directly on the contested employment decision" (quoting *Taylor v. Va. Union Univ.*, 193 F.3 219, 232 (4th Cir. 1999) (en banc))).  She must therefore employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, she must first establish a prima facie case of discrimination, including evidence (1) that she is a member of a protected class, (2) that she was meeting her employer's legitimate job expectations, (3) that she suffered an adverse employment action, and (4) that similarly situated

---

[2] In her Opposition, Plaintiff suggests that she has adduced direct evidence because both she and a co-worker, Marcia Moore, believed she was treated differently based on her race.  ECF 46 at 23. Plaintiff also refers to a statement Shakan allegedly made in support of the Black Lives Matter movement, which Moore apparently interpreted as an admission of past racist conduct.  *Id.* at 13-14.  Such subjective beliefs and interpretations, even when held by more than one person, do not amount to direct evidence of discrimination.  *See Christian v. S.C. Dep't of Labor Licensing & Regulation*, 651 F. App'x 158, 165 (4th Cir. 2016) (noting that a witness's subjective beliefs about the reasons for treatment of a co-worker do not carry any more weight than the plaintiff's assertion that the conduct was discriminatorily motivated); *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 609 (4th Cir. 1999) (noting an affidavit providing a personal opinion in conclusory fashion, without including specific factual examples, is inadequate to constitute direct evidence), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

employees outside of the protected class were treated differently.[3]  *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

Plaintiff is a member of protected classes as to her race and her age, and contends that she suffered an adverse employment action when Defendant failed to designate her as an excess employee or to renew her contract for 2017.[4]  Even assuming that the non-renewal at the

---

[3] There are some cases that do not require the plaintiff to present a comparator in order to make a prima facie case of discrimination because other circumstances "give rise to an inference of unlawful discrimination," for example, where instead of hiring a fully qualified plaintiff for an open position, a defendant continues to look for other applicants with the plaintiff's same qualifications. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253-54 (1981); *Bryant v. Aiken Regional Med. Ctr., Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003) ("We would never hold, for example, that an employer who categorically refused to hire black applicants would be insulated from judicial review because no white applicant had happened to apply for a position during the time frame in question.").  However, the record in this case does not present the kind of employment decision that "if otherwise unexplained, [is] more likely than not based on the consideration of impermissible factors." *Burdine*, 450 U.S. at 254.  As further discussed *supra*, Plaintiff's supervisors offered non-race-or-age-based reasons for declining to renew her contract.

[4] Defendant also contends that Plaintiff did not exhaust her administrative remedies with respect to the non-renewal of her contract.  The EEOC charge, filed in February of 2017, did not address her non-renewal, which had not yet occurred.  Plaintiff counters that she apprised the EEOC of the ensuing developments during the pendency of her charge.  Ultimately, because summary judgment is being granted on the merits, this Court need not expressly address the exhaustion argument.  Plaintiff's grievances other than the non-renewal do not constitute actionable discrimination, because they did not affect the terms and conditions of her employment and are not adverse employment actions.  *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (explaining an act is an adverse employment action where it "adversely affect[s] 'the terms, conditions, or benefits' of the plaintiff's employment" (alteration in original) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001))); *Von Gunten*, 243 F.3d at 868-69 (determining that a critical performance review that did not alter the terms, conditions or benefits of employment was not an adverse employment action).  Plaintiff argues that she received "disparate treatment in discipline based on false accusations" and a "false performance evaluation in May 2017."  ECF 1.  She adduces no evidence, however, that either the two disciplinary investigations or the performance evaluation, on their own, altered the terms, conditions, or benefits of her employment, other than the role they played in the eventual decision not to renew her contract.  Defendant adhered to the original terms of its one-year provisional contract with Plaintiff through its completion, and the terms, conditions, and benefits of her employment remained entirely constant.

conclusion of a completed one-year contract is an adverse action similar to a termination or a failure to hire, Plaintiff has failed to establish the other two components of a prima facie case.

First, she has not shown that she was meeting her employer's legitimate job expectations at the time her contract ended and was not renewed.  Importantly, it is the "perception of the decision maker which is relevant, not the self-assessment of the plaintiff."  *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).   Plaintiff attempts to suggest that the purported dissatisfaction with her performance stems solely from discriminatory animus on the part of her primary supervisor, Shakan.  That contention, however, is readily undermined by Defendant's evidence that two other independent evaluations of Plaintiff's classroom performance, at two different schools, by two different evaluators, resulted in unsatisfactory assessments.

Second, Plaintiff has not shown that similarly situated employees, outside of her protected classes, were treated differently with respect to non-renewal.  In her opposition, she provides no specific comparators, but simply alleges that she and Moore were treated less favorably than Caucasian teachers.  ECF 46 at 20.  Such general assertions do not constitute the evidence required for a prima facie case of disparate treatment.  *Purchase v. Astrue*, 324 F. App'x 239, 242 (4th Cir. 2009) (deeming an allegation that unspecified "similarly situated white employees" were treated differently to be conclusory and insufficient to establish a genuine issue of material fact).  While Plaintiff does briefly mention Peterson as a specific white employee who, in contrast with Plaintiff, successfully challenged his low performance evaluation rating from Shakan, she does so only in speculative and conclusory fashion and, moreover, has failed to provide evidence as to whether Peterson was similarly situated in most key ways, particularly whether he was a provisional teacher and, if so, whether he was renewed at the end of his provisional year.  *See Haywood v. Locke*, 387

Fed. App'x 355, 359 (4th Cir. 2010) (requiring a showing that a plaintiff is "similar in all relevant respects to [her] comparator.").

Even had Plaintiff been able to establish all of the elements of a prima facie case of discrimination, she has offered no evidence of pretext that would overcome Defendant's proffered legitimate, non-discriminatory reason for her non-renewal: her dissatisfactory performance, as corroborated by the observational evaluations from three separate evaluators who spent time in her classroom.  Plaintiff's subjective belief that she received unfair treatment based on her race or age is not based on any factual predicate and cannot defeat Defendant's summary judgment motion. *See, e.g.*, *Williams v. Cerberonics*, 871 F.2d 452, 455 (4th Cir. 1989) ("[A] Plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action."); *Settle v. Balt. Cty.*, 34 F. Supp. 2d 969, 999 (D. Md. 1999) (finding plaintiff's subjective belief that defendant's action was racially motivated was insufficient, in the absence of articulable facts showing a "racial nexus"); *Vazquez v. Md. Port Admin.*, 937 F. Supp. 517, 522 (D. Md. 1995) ("Generalized testimony by an employee regarding [plaintiff's] subjective belief that the adverse action was the result of discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate nondiscriminatory reason for the action.").  While the Court does not discount some of the difficulties Plaintiff claims to have faced—such as being assigned to multiple schools and experiencing disruptions during her performance evaluations—she has provided nothing linking those difficulties, let alone the ultimate decision not to renew her contract, to treatment *based on* her age or race.  Summary judgment is therefore warranted on Counts One and Three.

      **B.  Retaliation claim**

Count Two alleges a claim for retaliation under Title VII.  Plaintiff alleges that she filed an EEOC complaint on February 16, 2017, complaining that she had been subjected to age and race discrimination, and that Defendant's decision in June, 2017 not to renew her contract was retaliation for that protected activity.  Retaliation requires evidence "(1) that [plaintiff] engaged in a protected activity, (2) that the employer took a materially adverse action against him, and (3) [that] there is a causal connection between the protected activity and the adverse action." *Perkins v. Intern. Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019).  Plaintiff's filing of an EEOC complaint is quintessential protected activity, and this Court will assume arguendo that Plaintiff's non-renewal constitutes a materially adverse action.  Her claim fails, however, with respect to the third factor: the causal connection.

As with her claims for status-based discrimination, Plaintiff fails to allege any direct evidence to substantiate retaliation, such as comments made to her by supervisors or hiring authorities to suggest that they were aware of, or were acting in reaction to, her complaints of protected activity.  *See, e.g.*, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (finding no direct or indirect evidence of discriminatory motive where plaintiff offered only conclusory statements and no discriminatory statements by supervisors).  She relies, therefore, on the temporal relationship between the complaint and the non-renewal.  The flaw in Plaintiff's logic, however, is that two of the three negative performance assessments Defendant cites as its reason for her non-renewal—as well as her two alleged disciplinary violations—occurred prior to February 16, 2017.  There is, further, no evidence that Reed Cooper, the African American assistant principal who completed the third performance assessment in March, 2017, had knowledge of the EEOC complaint, which made no reference to him.  Without evidence that Cooper knew of the EEOC complaint, Plaintiff cannot demonstrate a question of fact as to

retaliation.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir.2007) ("The first thing [a plaintiff] must be able to prove, therefore, is . . . knowledge that he engaged in protected activity.").

Ultimately, the five months between Plaintiff's EEOC complaint and her non-renewal does not amount to the "very close" temporal proximity required to establish causality in the absence of other evidence of retaliation.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Plaintiff lacks any other evidence of causality, particularly because the evidentiary record was largely established prior to her protected activity and could not therefore have been manufactured with retaliatory intent.  Accordingly, summary judgment for Defendant is also appropriate as to Count Two.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF 39, will be GRANTED, and this case will be closed.  A separate Order follows.


Dated:  April 6, 2021                                            /s/
                                                     Stephanie A. Gallagher
                                                     United States District Judge